# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| TREMAINE D. COWAN, | : Case No. 1:23-cv-315 |
| Plaintiff, | : District Judge Matthew W. McFarland |
| | : Magistrate Judge Karen L. Litkovitz |
| vs. | : |
| TRAVIS WELLMAN | : |
| Defendant. | : |

## REPORT AND RECOMMENDATION

Plaintiff, an inmate at the Southern Ohio Correctional Facility (SOCF), initiated this lawsuit on May 24, 2023 pursuant to 42 U.S.C. § 1983 for alleged violations of his civil rights while incarcerated at SOCF. (Doc. 1). On June 20, 2023, the Court issued an Order and Report and Recommendation allowing plaintiff's Eighth Amendment and state-law tort claims against defendants John Doe 2, John Doe 3, John Doe 4, and John Doe 5 and recommending dismissal of plaintiff's other claims (Doc. 8 at PAGEID 55), which the District Judge adopted (Doc. 13). The Court further ordered plaintiff to file an amended complaint consistent with its Order and Report and Recommendation once he learned the identities of the John Doe defendants. (*See* Doc. 8 at PAGEID 55; *see also* Doc. 16 at PAGEID 94-95). Consistent with those orders, plaintiff ultimately filed an amended complaint, naming only Travis Wellman, an SOCF corrections officer, as a defendant. (*See* Doc. 27). This matter is before the Court on the parties' cross motions for summary judgment. (Docs. 40, 49, 52, 53,[1] and 54).

---

[1] Documents 52 and 53 are identical but docketed twice to capture two filings events. While captioned a "Motion for Summary Judgment and Reply in Opposition to Defendant's Motion For Summary Judgment," the Court construes the filing as a reply in support of plaintiff's previously filed motion for summary judgment (Doc. 40) and a response to defendant Wellman's motion for summary judgment (Doc. 49).

## I. Factual Background

On October 27, 2022, SOCF officials decided to transfer plaintiff to the restrictive housing block (J-2) after plaintiff reached out from his cell and grabbed an SOCF corrections officer. (*See* Disposition of Grievance, Doc. 33 at PAGEID 173; Def.'s MSJ Ex. B-1 at 2:30-3:30; Inmate Use of Force Statement, Doc. 33 at PAGEID 176, ("I tried to grab the CO's baton all because I did not get my commissary.")). When plaintiff failed to move voluntarily, his forced cell extraction and transfer ensued, leading to the alleged use of force at issue in this case. (*See* Disposition of Grievance, Doc. 33 at PAGEID 173).

In support of his motion for summary judgment, defendant Wellman proffers a series of body worn and handheld camera recordings of the cell extraction and transfer taken by members of the Special Response Team (SRT). (*See* Def.'s MSJ Exs. A-1, A-2, B-1, B-2, B-3, C-E). The first of three handheld camera recordings shows defendant Wellman holding helmet number 4 and identifying himself as a member of the SRT. (Def.'s MSJ Ex. B-1 at 0:47-0:49). The video recordings show that, prior to plaintiff's cell extraction, a negotiator tried to convince plaintiff to leave his cell voluntarily, but plaintiff refused. (Def.'s MSJ Ex. B-1 at 2:30-4:08). Plaintiff was given a final order to cooperate, which he refused. (Def.'s MSJ Ex. A-1 at 1:58-2:15). The five-member SRT used a chemical agent on plaintiff, entered his cell, and forcibly removed him. Once outside the cell, plaintiff was escorted by the SRT to the entrance of J-2S, where plaintiff then refused the officers' commands to walk and stand—going limp/dead weight. (Def.'s MSJ Ex. B-1 at 6:58-7:11). The SRT officers placed plaintiff in a holding cell; obtained a wheelchair; and sat plaintiff in the wheelchair to continue the escort. (*Id.* at 7:11-8:55). The SRT

transported plaintiff to the medical unit in a wheelchair, where he was mostly uncooperative during the examination and did not report any specific injuries.[2] (*Id.* at 0:01-3:30).

Plaintiff was then transported by wheelchair from the medical unit to the top of the stairway leading to J-2. SOCF officer Richardson's body worn camera recording shows that defendant Wellman (in helmet 4) was on plaintiff's left side and another officer was on plaintiff's rights side. (Def.'s MSJ Ex. C at 16:16-57). An unknown officer gave plaintiff repeated orders to "stand up" and "stop using [his] body weight." (*Id.*). Plaintiff refused. (*Id.*). Defendant Wellman and the other SOCF officer then lifted plaintiff from the wheelchair. Plaintiff went limp, his body going dead weight, with his knees dragging on the ground. (*Id.*). Plaintiff was escorted down a set of stairs. At the bottom of the steps, the escort to plaintiff's J-2 cell continued. During this portion of the escort, plaintiff appeared at times to go limp and at other times to walk. (*See id.*). In this and several of the recordings proffered by defendant Wellman, plaintiff can be heard shortly before reaching his J-2 cell front saying something like, "broke my hand" or "break my hand." (*Id.* at 16:52-54; Def.'s MSJ Ex. A-2 at 16:53-55; Def.'s MSJ Ex. B-2 at 7:56-58; Def.'s MSJ Ex. D at 16:53-55; Def.'s MSJ Ex. E at 16:15-17).

In his verified amended complaint,[3] plaintiff states he was escorted by wheelchair from the medical unit to J-2. (Doc. 27 at PAGEID 125). When they reached the top of the stairs to J-

---

[2] Plaintiff stated that he had pain in his penis, but he does not raise such an injury in his complaint, and this appears to have been part of his defiant behavior throughout the transfer. (*Id.* at 2:25-26).
[3] Because the amended complaint is verified (*see* Doc. 27 at PAGEID 128), the Court considers its contents as supporting plaintiff's motion for summary judgment pursuant to 28 U.S.C. § 1764, which states:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate,

3

2, defendant Wellman assisted plaintiff out of the wheelchair and then escorted him to his individual cell. (*Id.*). Plaintiff alleges that defendant Wellman "assisted [him] on his right side. . . ." (*Id.*). Plaintiff alleges that defendant Wellman "was bending [his] pinky [u]ntil[] it broke" and that plaintiff can be heard on body worn camera footage saying: "you breaking my pinky[.]" (*Id.*). Plaintiff alleges that from October 27 to October 31, 2022, he was "on hunger strike trying to stop & inform SOCF staff [his] pinky was broke[n]." (*Id.*). On October 31, 2022, plaintiff was taken to the medical unit where his right pinky finger was X-rayed and determined to be fractured. (*Id.* at PAGEID 126). Dr. John Gardner ultimately ordered surgery on that finger, which occurred on November 8, 2022. (*Id.*).

Plaintiff also submitted a notarized affidavit in support of his motion for summary judgment. (Doc. 32). In it, plaintiff appears to restate information from his medical files and Use of Force documents, which are referenced in but not actually attached to the affidavit. (*See id.* at PAGEID 162).[4] Plaintiff states that in his October 27, 2022 Inmate Use of Force Statement he reported that he "got [his] pinky broke." (*Id.* at PAGEID 164; Doc. 33 at PAGEID 176). Plaintiff states that during his Use of Force interview, he reported that "when I was going to the

---

verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

. . . .

(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).

(Signature)".

Plaintiff's verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment under Fed. R. Civ. P. 56(c). *Lavado v. Keohane*, 992 F.2d 601, 60 (6th Cir. 1993); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

[4] Plaintiff did file several documents separately. (*See* Doc. 33). As relevant here, plaintiff filed part of defendant Wellman's Use of Force statement (*id.* at PAGEID 175), his own Use of Force Statement (*id.* at PAGEID 176), and three medical records (*id.* at PAGEID 177-79). Neither party filed all of the Use of Force documents.

4

hole the SRT's bent my pinky[.]" (Doc. 32 at PAGEID 164). Plaintiff states he clarified during a November 3, 2022 interview that he "didn't receive any injuries on my way to medical. This happened afterwards on my way from medical to the hole." (*Id.*). Plaintiff reiterates that it was defendant Wellman who "assaulted" him "using excessive force by bending & br[e]aking [his] right pinky. . . ." (*Id.* at PAGEID 165). Plaintiff notes that in SOCF officer John P. McCoy's Use of Force Statement, Mr. McCoy recalled that defendant Wellman was on plaintiff's right side. (*Id.* at PAGEID 164-65). Plaintiff then summarizes his medical records related to his broken finger. (*Id.* at PAGEID 165-69).

In addition to video footage of the incident, defendant Wellman proffered his declaration (Doc. 49-1) and plaintiff's medical records related to the finger injury. (Doc. 49-2).[5] Defendant Wellman's declaration states, "At no time during [the escort of plaintiff from the medical unit to the J-2 cell] did [he] manipulate or twist [plaintiff]'s fingers." (Doc. 49-1 at PAGEID 250, ¶13). Defendant Wellman also states that he did not "twist or manipulate" plaintiff's fingers when they placed him in his J-2 cell. (*Id.*, ¶ 15). Defendant Wellman states that his body worn camera fell into a toilet during the incident, and the footage could not be retrieved. (*Id.*, ¶ 17).

Plaintiff's medical records show that on October 30, 2022, he told medical staff that he injured his right pinky finger "in a fight about four days ago." (Doc. 49-2 at PAGEID 282). This same record states in the "Other/Additional comments" section: "Patient injured finger in altercation on 10-27-22[.]" (*Id.*). On October 31, 2022, SOCF medical staff summarized plaintiff's comments regarding the injury as follows: "a CO grabbed and bent his fifth finger on his right hand. He does have discoloration on posterior side of his pinky finger going down into his palm." (*Id.* at PAGEID 274).

---

[5] Bertha Goodman, SOCF Healthcare Administrator, authenticated these records in an accompanying affidavit. (*See* Doc. 49-2 at PAGEID 315-16).

5

## II. Standard of Review

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper unless the nonmoving party "establish[es] genuinely disputed material facts by 'citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute.'" *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 403 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(c)(1)). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so

that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, "[f]acts that are not blatantly contradicted by [the evidence] remain entitled to an interpretation most favorable to the non-moving party." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011). "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Maston v. Montgomery Cnty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

A fact is "material" if its resolution will affect the outcome of the lawsuit. *Beans v. City of Massillon*, No. 5:15-cv-1475, 2016 WL 7492503, at *5 (N.D. Ohio Dec. 30, 2016), *aff'd*, No. 17-3088, 2017 WL 3726755 (6th Cir. 2017) (citing *Anderson*, 477 U.S. at 248). The party who seeks summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 322. To make its determination, the court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings)). A party's status as a pro se litigant, however,

7

does not alter the party's duty on a summary judgment motion to support his factual assertions with admissible evidence. *Maston*, 832 F. Supp. 2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)).

**II. Analysis**

    A. <u>Spoliation</u>

Before turning to the merits, plaintiff states the following regarding defendant Wellman's missing body worn camera footage in his response to defendant Wellman's motion for summary judgment: "If camera footage can be used to figure out what really happen[e]d then it disap[p]ear[s] or [is] not available then that inference can be use[d] as evidenc[e] in favor to the mov[]ing party." (Doc. 53 at PAGEID 331). The Court construes this as a motion by plaintiff for sanctions against defendant Wellman for spoliating evidence.

Plaintiff, as the movant, bears the burden of proof on spoliation. *See Yoe v. Crescent Sock Co.*, No. 1:15-cv-3, 2017 WL 5479932, at *9 (E.D. Tenn. Nov. 14, 2017) (citing *Byrd v. Alpha Alliance Inc. Corp.*, 518 F. App'x 380, 384 (6th Cir. 2013)). A party seeking a spoliation sanction is required to prove:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Adkins v. Wolever*, 692 F.3d 499, 503-04 (6th Cir. 2012) (quoting *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553-54 (6th Cir. 2010)). The second element may be "satisfied 'by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently.'" *Adkins*, 692 F.3d at 504-05 (quoting *Beaven*, 622 F.3d at 554).

8

Even assuming plaintiff meets the first and third elements of this claim, he has proffered no evidence of the second.[6] The only evidence in the record on this point appears to be defendant Wellman's declaration, in which he states that the footage fell into the toilet during the incident. (*See* Def.'s Decl., Doc. 49-1 at PAGEID 250, ¶ 17). This does not show that defendant Wellman acted with a culpable state of mind. Without such evidence, plaintiff cannot meet his burden to prove spoliation. Therefore, the Court denies plaintiff's request for spoliations sanctions.

B. <u>Eighth Amendment excessive force</u>[7]

Defendant Wellman argues that the evidence contradicts plaintiff's claim that defendant Wellman injured plaintiff's right pinky finger during plaintiff's October 27, 2022 transfer from the medical unit to the J-2 cell. Defendant Wellman points to the fact that the recording shows him on plaintiff's *left* side—as opposed to plaintiff's statement that defendant Wellman was on his right side. (*See* Def.'s MSJ Ex. C at 16:30-57). Defendant Wellman also points to the note in plaintiff's October 30, 2022 medical record reflecting plaintiff's statement that he injured his hand "in a fight about 4 days ago"—as opposed to plaintiff's assertion that the injury occurred during the transfer. (Doc. 49-2 at PAGEID 282).[8] Finally, defendant Wellman states that SOCF

---

[6] Plaintiff offers only conclusory allegations in his unverified response to defendant's motion for summary judgment (Doc. 53), where he raises this issue. Otherwise, plaintiff states in his affidavit: "Body worn camera[s] are believed to be waterp[r]oof." (Doc. 32 at PAGEID 164). To constitute competent summary judgment evidence, however, an affidavit "must be made on personal knowledge" and "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4). This statement does not meet these requirements.

[7] While portions of plaintiff's filings seem to suggest a deliberate indifference claim under the Eighth Amendment related to the care he received in the days following this incident, plaintiff did not name any SOCF medical care providers as defendants in his amended complaint. Plaintiff also does not allege or point to evidence showing that defendant Wellman "subjectively perceived facts from which to infer substantial risk" of harm to plaintiff, which is required to sustain such a claim. *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). Thus, to the extent the Court were to construe such a claim in plaintiff's amended complaint, it should be dismissed.

[8] As for the statement in plaintiff's medical records about the injury coming from a fight, plaintiff argues that this was a lie by medical staff to cover up the excessive force. (Doc. 53 at PAGEID 330). This argument is not sworn or verified and cannot be considered on a motion for summary judgment.

officer Watt's body worn camera footage shows no twisting or manipulation of plaintiff's hand—consistent with defendant Wellman's declaration. (*See* Def.'s MSJ Ex. D, starting at 16:27; Docs. 49-1 at PAGEID 250, ¶ 13). Putting aside these asserted inconsistencies and assuming defendant Wellman used force against plaintiff, defendant Wellman argues that the force was not malicious but rather necessary to control a clearly non-compliant inmate.

In his response, plaintiff argues that the video recordings, which are taken from slightly different angles, do not show whether defendant Wellman twisted or manipulated his hands but uniformly capture plaintiff saying something about his hand being broken. (*See* Def.'s MSJ Ex. A-2 at 16:52-55; Def.'s MSJ Ex. B-2 at 7:56-59; Def.'s MSJ Ex. C at 16:51-54; Def.'s MSJ Ex. D at 16:52-55; Def.'s MSJ Ex. E at 16:14-17). Plaintiff also points to his Use of Force Statement, where he stated that he "got [his] pinky broke." (Doc. 32 at PAGEID 164).

In defendant Wellman's reply in support of his motion for summary judgment, he argues that plaintiff has presented no evidence to support his claims. To the extent plaintiff relies on the video evidence, defendant Wellman argues that plaintiff's version of events is undercut by plaintiff's false assertion that defendant Wellman was on his right side during the escort.

A convicted prisoner's right to be free from the use of excessive force by a prison official is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). Eighth Amendment excessive force claims include both a subjective and an objective component. *Johnson v. Sootsman*, 79 F.4th 608, 615 (6th Cir. 2023). The subjective component focuses on the prison official's state of mind, while the objective component analyzes whether the pain inflicted on the prisoner was "sufficiently serious." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)).

The core question for the subjective component is whether the force used by a

correctional officer "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). *See also Sootsman*, 79 F.4th at 616. Force believed necessary, even if that belief is unreasonable, will not violate the Eighth Amendment. *Sootsman*, 79 F.4th at 616 (citing *Whitley*, 475 U.S. at 324). To determine intent, courts are to consider: "What was the extent of the prisoner's injury? What was the nature of the threat that justified the use of force? Was the amount of force proportional to the threat? And did the officer take any actions designed to reduce the required amount of force?" *Id.* at 618 (citing *Hudson*, 503 U.S. at 7, and *Whitley*, 475 U.S. at 321). These questions underscore that force used "in a good-faith effort to maintain or restore discipline" does not violate a prisoner's Eighth Amendment rights. *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004)).

  Objectively, the prisoner "need not prove 'extreme' or 'serious' harms" because "the malicious and sadistic infliction of pain violates . . . contemporary standards [of decency] whether or not the pain leads to any significant injury." *Sootsman*, 79 F.4th at 616 (quoting *Hudson*, 503 U.S. at 9). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Cordell*, 759 F.3d at 580-81 (citing *Wilkins*, 559 U.S. at 37). "When prison officials maliciously and sadistically use force to cause harm . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*,

11

503 U.S. at 9). The absence of a serious injury is nonetheless relevant as a factor that suggests whether the use of force may "plausibly have been thought necessary" in a given situation. *Id.* (quoting *Hudson*, 503 U.S. at 7). "Although the Eighth Amendment can reach minor injuries caused by significant force . . . [it] does not apply to 'de minimis uses of physical force' so long as this force does not repulse 'the conscience of mankind.'" *Sootsman,* 79 F.4th at 616 (quoting *Hudson*, 503 U.S. at 9-10).

Defendant Wellman first argues that plaintiff has not presented evidence sufficient to create a genuine issue of material fact that defendant Wellman used force on plaintiff *at all* on October 27, 2022. The Court disagrees. While defendant Wellman is correct that the video recordings show him on plaintiff's left as opposed to right side during the transfer from the medical unit to plaintiff's J-2 cell, the Court does not find plaintiff's mistaken recollection on this detail sufficient to wholly undercut plaintiff's verified account that it was defendant Wellman who injured his pinky finger. (*See* Doc. 27 at PAGEID 125; Doc. 32 at PAGEID 165). At the summary judgment stage, it is not the function of the Court to weigh the veracity of plaintiff's statements against other evidence in the record. *Anderson*, 477 U.S. at 249.

In addition, the fact that defendant Wellman was on plaintiff's left side does not preclude a finding that defendant Wellman accessed and injured plaintiff's right hand. Defendant Wellman's video Exhibit C provides the clearest view of his position relative to plaintiff's hands during the part of the transfer where the alleged excessive force occurred. When the video is slowed to 0.5 speed, it shows defendant Wellman with his hand on plaintiff's left hand, while the SOCF officer on plaintiff's right side has his hand on plaintiff's right hand. (Def.'s MSJ Ex. C at 16:29-31). Toward the end of this clip, the SOCF officer's hand appears to disengage from plaintiff's right hand before going out of frame. In defendant Wellman's video Exhibit E, his

12

right arm appears to be close to both of plaintiff's cuffed hands, while the SOCF officer on plaintiff's right side does not seem to be in a similar position. (Def.'s MSJ Ex. E at 16:08; *see also* Def.'s MSJ Ex. D at 16:42 (with defendant Wellman's arm shown below the SOCF officer's arm on plaintiff's right side)). Based on these recordings, a reasonable juror could conclude that defendant Wellman had access to both of plaintiff's hands during the relevant part of the transfer.

Finally, the October 30, 2022 medical record notation stating plaintiff's right pinky injury was the result of a "fight about 4 days ago" does not preclude a finding that plaintiff's injury occurred on October 27, 2022, the date of his transfer from the medical unit to his J-2 cell. (*See* Doc. 49-2 at PAGEID 282). First, the notation does not confirm the injury did not occur on October 27, 2022, as it only states: "*about* 4 days ago." (*Id.* (emphasis added)). Moreover, the very same record refers to the injury occurring in an "altercation on 10-27-22[.]" (*Id.*). In addition, the terms "fight" and "altercation" as used in the medical record are not clear. There is no evidence demonstrating that plaintiff engaged in a fight or altercation with another inmate around that time. After viewing video recordings of the entire transfer between plaintiff's original cell to his J-2 cell, a reasonable juror could conclude that the notations of a "fight" or "altercation"[9] referred to this transfer.

Given the foregoing, there is a genuine issue of material fact as to whether defendant Wellman "was the officer who caused the injury to [plaintiff's] right pinky finger" on October 27, 2022. (Doc. 49 at PAGEID 244).

---

[9] Merriam-Webster defines the noun "fight" as "a hostile encounter." *See Fight*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/fight (last visited November 5, 2024) [https://perma.cc/6MDB-2NGZ]**.** Merriam-Webster defines "altercation" as "a noisy, heated, angry dispute." *See Altercation*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/altercation (last visited November 5, 2024) [https://perma.cc/5XA6-JD5N].

Assuming that defendant Wellman used force on plaintiff, he does not appear to challenge the objective element of the Eighth Amendment claim—having proffered evidence demonstrating that plaintiff's right pinky was broken and required surgery. (*See, e.g.*, Doc. 49-2 at PAGEID 251). Therefore, there are no issues of fact as to whether plaintiff establishes the objective element of his Eighth Amendment claim.

Turning to the subjective element of plaintiff's Eighth Amendment claim, the Court examines the *Sootsman* factors. 79 F.4th at 618. As for the extent of plaintiff's injury, it is undisputed that he suffered a broken bone that required surgery. This evidence could lead a reasonable juror to conclude that the amount of force used was intentional, not accidental. (*See, e.g.*, Doc. 49-2 at PAGEID 251). As for the threat plaintiff posed, video evidence shows that plaintiff was restrained from the time he was in the medical unit through the time of the alleged injury. While plaintiff appears to use his body weight to resist escort at certain points throughout the incident (*see, e.g.*, Def.'s MSJ Ex. D at 16:27-39), the recording also shows plaintiff appearing to walk normally and obeying commands for the approximately fifteen seconds before he reaches his J-2 cell front—including the time when he can be heard saying something like, "broke my hand" (*see id.* at 16:40-55). This evidence supports the conclusion plaintiff did not pose a significant threat. Regarding whether the force used was proportional to the threat, the video evidence could reasonably be construed to show that plaintiff posed a minimal threat, while the injury was clearly serious. (*See id.*). Finally, as to whether defendant Wellman took any actions designed to reduce the required amount of force, defendant Wellman has presented evidence that SOCF officials used a negotiator and O/C spray to try to gain plaintiff's compliance at the beginning of the transfer process. (*See, e.g.*, Def.'s Decl., Doc. 49-1 at PAGEID 249, ¶¶ 6-7). On the other hand, those measures are less relevant to the period covering the specific use of force at issue, which occurred *after* SOCF officers gained some

degree of plaintiff's compliance based on video evidence. (*See generally* Def.'s MSJ Exs. A-2, B-2, C-E). Overall, considering the *Sootsman* factors, the Court finds that plaintiff has raised a genuine issue of material fact on the subjective element of his excessive force claim.

Defendant Wellman resists this conclusion by pointing to plaintiff's generally obstreperous behavior. Indeed, the video recordings of the entire incident—starting with plaintiff's cell extraction to his examination in the medical unit to his transport to his J-2 cell—demonstrate that plaintiff repeatedly disobeyed orders to cuff up, stand up, and move; did not cooperate with his medical examination; and was verbally combative. Nevertheless, plaintiff alleges that defendant Wellman broke his finger during a discrete period in this chain of events—a period during which a reasonable juror could reasonably conclude based on the video recordings that plaintiff was physically restrained, quiet, and complying with orders (i.e., a period during which discipline had been restored). (*See, e.g.*, Def.'s MSJ Ex. A-2 at 16:41-57 (a SOFC officer can be heard saying "walk," and plaintiff replies, "I *am* walking"); Def.'s MSJ Ex. D at 16:40-57 (showing plaintiff restrained, walking, saying very little)). This evidence creates a genuine issue of material fact as to whether the *particular force at issue* "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7). To hold otherwise would set a precedent that officers enjoy blanket insulation from liability where an inmate is generally poorly behaved. Defendant Wellman cites no authority for such a proposition.

For all of the foregoing reasons, the Court finds that genuine issues of material fact preclude summary judgment in favor of either party on plaintiff's Eighth Amendment excessive force claim.

15

C. <u>Qualified immunity</u>

Defendant Wellman lastly argues that he is entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity insulates government officials not only from individual liability for money damages, but it also shields them from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001), *overruled in part*, *Pearson v. Callahan*, 555 U.S. 223 (2009).

There are two steps to the qualified immunity analysis: (1) whether the officer's conduct violated a constitutional right, and (2) if the first step is satisfied, whether the right was clearly established at the time of the injury. *Saucier,* 533 U.S. at 201. In its discretion, the Court may choose to address either question first given the particular circumstances of the case before it. *Pearson,* 555 U.S. at 236. Once a defendant raises the qualified immunity defense, plaintiff has the burden to demonstrate that the official is not entitled to qualified immunity. *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010). For the court to find that a constitutional right is clearly established, "its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Defendant Wellman argues that he is entitled to qualified immunity because a constitutional violation did not occur, and even if it had, it was not clearly established that defendant Wellman could not use the type of force alleged here to "restrain Plaintiff, who was actively resisting officers' orders. . . ." (Doc. 49 at PAGEID 246).

16

As to the first step of the analysis, the Court has already determined that there is a genuine issue of material fact as to whether defendant used excessive force on plaintiff under the Eighth Amendment. As to the second step of the analysis, it is clearly established that an inmate may not be assaulted for no reason. *See Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 540 (6th Cir. 2015) ("Under the Fourteenth, Fourth, or Eighth Amendments, assaults on subdued, restrained and nonresisting detainees, arrestees, or convicted prisoners are impermissible.") (citing *Pelfry v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995); *Phelps v. Coy*, 286 F.3d 295, 301-02 (6th Cir. 2002)). Based on the evidence presented, a reasonable juror could conclude that plaintiff was subdued, retrained, and non-resisting at the time defendant Wellman applied the excessive force at issue—violating clearly established law. Defendant Wellman is not entitled to qualified immunity.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Plaintiff's motion for summary judgment (Doc. 40) be **DENIED**.
2. Defendant Wellman's motion for summary judgment (Doc. 49) be **DENIED**.

December 19, 2024

KAREN L. LITKOVITZ
Chief United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| TREMAINE D. COWAN, | : | Case No. 1:23-cv-315 |
| Plaintiff, | : | District Judge Matthew W. McFarland |
| | : | Magistrate Judge Karen L. Litkovitz |
| vs. | : | |
| | : | |
| TRAVIS WELLMAN | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |

# NOTICE

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).